NUMBER 13-08-00598-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


GILBERT HINOJOSA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 214th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Justice Yañez
 

 A jury convicted appellant, Gilbert Hinojosa, of indecency with a child by exposure. (1) 
The trial court found that Hinojosa was a repeat felony offender, enhanced punishment
from a third-degree felony to a second-degree felony, and sentenced Hinojosa to
seventeen years' imprisonment. (2) By one issue, Hinojosa contends that the evidence is
factually insufficient to sustain his conviction. We affirm.

I. Background

 At trial, the State presented the testimony of Andres Alvarez, Tanya Flores, Rose
Rosas, E.S., and Ricardo Jimenez. Hinojosa presented the testimony of his mother,
Imelda Ferritz.

 E.S. testified that she was seven years old and that she had witnessed a man
wearing an orange shirt and blue shorts in the park "doing the bad things." According to
E.S. the man was "letting his middle show," and she saw "the skin." The State asked E.S.
to circle the part of the body she called the "middle" on an illustration of an anatomically
correct male figure. E.S. complied, and the trial court admitted State's exhibit number two
into evidence--an illustration wherein E.S. circled the male figure's penis. After E.S.
circled the penis on the figure, the State asked, "Is that the part that you saw on the man
at the park?" and E.S. replied, "Yes." E.S. testified that a man named Ricardo showed her
some pictures, and she was able to find the picture that looked like the man that was
showing his "middle" in the park.

 Rosas, E.S.'s mother, testified that she took her son and E.S. to the park and was
sitting on a bench while the children played. According to Rosas, E.S. ran up to her, and
because E.S. "looked a little different," Rosas asked her "what had happened." E.S.
pointed at a man and claimed that he had his pants open showing his "private." When
Rosas asked E.S. if she saw the man's "private," E.S. responded, "Yes." According to
Rosas, E.S. sometimes refers to the penis as "a middle." Rosas stated that the man was
wearing a red shirt. Rosas was able to identify the man from a photo lineup. On cross-examination, Rosas clarified that she identified Hinojosa as the man her daughter pointed
to in the park. Rosas stated that they left and that she then attempted to call police, but
her "call wouldn't go through on [her] cell phone." Rosas testified that after a friend called
the police, an officer called her approximately ten minutes later.

 Officer Alvarez testified that he was dispatched to a playground at a local park to
investigate a report that a man wearing an orange shirt had exposed himself to a child. On
redirect examination, Officer Alvarez clarified that the investigation involved a male who
had exposed his genitals to a small child. When he arrived at the park, Officer Alvarez saw
Hinojosa, who matched the description given by dispatch. When Officer Alvarez made
contact with Hinojosa, Officer Alvarez informed him that a report was made that a man
matching Hinojosa's description was exposing himself to children. Hinojosa denied that
he had committed the offense. Officer Alvarez asked if Hinojosa had any children in the
park, and Hinojosa replied that he did not. As Officer Alvarez spoke to Hinojosa, he
noticed that "the zipper on [Hinojosa's] shorts was down a little further than halfway" and
stated, "You could see his underclothes, you know." Officer Alvarez asked, "[I]f you don't
have any children in the park, what were you doing in the playground and why are your
shorts unzipped?" Officer Alvarez testified that Hinojosa did not offer an explanation, and
instead stated, "I know this looks bad." Officer Alvarez stated that he contacted dispatch
asking if the complainant was still at the park; when dispatch informed him that she had
left, Officer Alvarez requested her phone number, called her, and spoke to her about the
incident.

 On cross-examination, Officer Alvarez testified that Hinojosa was cooperative,
answered his questions, and did not attempt to flee. Officer Alvarez testified that neither
E.S. nor her mother returned to the park that day to identify Hinojosa. Officer Alvarez
stated that he did not know the exact location in the playground where the alleged incident
occurred.

 Detective Flores testified that she contacted Rosas and set up an appointment for
E.S. to be interviewed at the Child Advocacy Center (CAC). Detective Flores prepared a
photo array, including a picture of Hinojosa, which she provided to the forensic child
interviewer at the CAC. Detective Flores showed the lineup to Rosas, and Rosas identified
Hinojosa as the man she saw in the park. (3)

 Jimenez, a forensic interviewer at the CAC, testified that when he interviewed E.S.
she identified Hinojosa from a photo lineup. Jimenez stated that he asked E.S. to circle
the picture of the man who exposed his genitals at the park in a photo lineup, and she
circled Hinojosa's picture. The trial court admitted State's exhibit number three--a photo
array, wherein E.S. circled Hinojosa's picture.

II. Standard of Review and Applicable Law

 In a factual sufficiency review, we view the evidence in a neutral light to determine
whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly
unjust or the jury's verdict is against the great weight and preponderance of the evidence. (4) 
This Court will not reverse the jury's verdict unless we can say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradicts the
verdict. (5)

 Both legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge. (6) "Such a charge would be one that
accurately sets out the law, is authorized by the indictment, does not unnecessarily
increase the State's burden of proof or unnecessarily restrict the State's theories of liability,
and adequately describes the particular offense for which the defendant was tried." (7) A
person commits the offense of indecency with a child by exposure if "with a child younger
than 17 years and not the person's spouse . . . the person  . . . (2) with intent to arouse or
gratify the sexual desire of any person: (A) exposes . . . any part of the person's genitals,
knowing the child is present." (8)

III. Discussion By his sole issue, Hinojosa contends that the evidence is factually insufficient to
prove his guilt beyond a reasonable doubt. As contrary evidence, Hinojosa points to the
following: (1) E.S. did not identify him at the scene of the offense; (2) he did not attempt
to flee when Officer Alvarez approached him; (3) he answered all of Officer Alvarez's
questions; (4) he "specifically denied that he exposed himself"; and (5) he was cooperative. 
Hinojosa also asserts that "[i]t would not be fair to convict [him] on the single word of a
seven year old child."

 At trial, E.S. indicated that she saw a man expose his "middle" and saw his "skin"
at a playground. E.S. circled the penis of an anatomically correct illustration of a male, and
testified that was the part of the body she called the "middle." Jimenez testified that E.S.
identified Hinojosa from a photo lineup as the man who exposed his penis at the
playground. Rosas testified that E.S. pointed at Hinojosa and told her that he had exposed
his penis to her. The State presented evidence that Rosas identified Hinojosa as the man
who exposed his penis to E.S. from a photo lineup. Officer Alvarez stated that he saw
Hinojosa walking away from the playground and that when he approached Hinojosa, he
noticed that his zipper was down and his underclothes were showing.

 After viewing the evidence in a neutral light, we cannot conclude that the evidence
supporting the verdict is so weak that the jury's verdict seems clearly wrong and manifestly
unjust. (9) Furthermore, we cannot say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the verdict. (10) We overrule
Hinojosa's sole issue.

IV. Conclusion

 We affirm the trial court's judgment.


 

 LINDA REYNA YAÑEZ,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 31st day of August, 2009.
1. See Tex. Penal Code Ann. § 21.11(a)(2)(A) (Vernon 2003).
2. See id. § 12.42 (Vernon Supp. 2008).
3. The trial court admitted into evidence State's exhibit number one--a photo lineup wherein Rosas
circled Hinojosa's picture.
4. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).
5. Id. at 417.
6. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.-Corpus Christi 2002, pet. ref'd).
7. Malik, 953 S.W.2d at 240.
8. Tex. Penal Code Ann. § 21.11.
9. See Watson, 204 S.W.3d at 414-15.
10. See id. at 417.